## BURDICK vs. BRIGGS.

APPEAL FROM CIRCUIT COURT, COLUMBIA COUNTY.

Heard February 9.]　　　　　　　　　　　　　[Decided May 4, 1860.

### Bill of Exceptions—Divorce—Dower—Evidence.

A decree for divorce from the bonds of matrimony, cuts off the wife's right of dower in the lands of the husband.

It seems that a wife suing for a divorce from the bonds of matrimony, may stipulate with her husband that she will release all right of dower in his lands.

When a complaint, in general terms, avers that the dower of the wife was cut off by a decree of divorce, without averring for what cause it was granted, it will be presumed to have been for a cause which cut off her dower, unless the contrary be made to appear.

Under sec. 16, chap. 133, R. S., it is not necessary to have a bill of exceptions sealed and signed by the judge who tried the cause; but where the bill is prepared and served, and no amendments are served within the time, the party excepting may file the same, with proof of no amendments being served, and thus make the bill part of the record of the case; but, under sec. 12, chap. 264, 1860, the judge must sign the bill of exceptions.

It seems when a party has prepared and served a bill of exceptions, under the rules of court, and the opposite party has served no amendments, the party making the bill, upon proof of the service, &c., is entitled to have the bill signed, without further act on his part.

A certificate of the U. S. Land office, of the entry of land, is evidence of that fact, under our statute.

This was an action commenced by Israel F. Burdick, against Harvey Briggs and Frances L. Briggs, to foreclose a mortgage. The complaint, filed January 2, 1858, set forth that the plaintiff was the owner of certain lands, in Columbia county, containing 180 acres, except 44 acres, which had been sold to one J. Ewing, by the former owner; that the plaintiff had bargained and paid for the other part of the land to one Parker Bowman, who before that time was the owner in fee of the land; that the plaintiff sold the land to the defendant, Frances L. Briggs, and made a quit claim deed of the land to her; and also a quit claim deed from Bowman and his wife was made to Frances L. Briggs, for the part sold to Ewing. That at the same time the defendant made the notes and mortgage on the lands, to secure the purchase money, which this suit was brought to foreclose. At the same time the plaintiff made the following agreement:

" This agreement, made and executed this 23d day of July, A. D. 1855, by and between Israel F. Burdick, of the town of Lewiston, county of Columbia, and state of Wisconsin, party of the first part, and Frances L. Briggs, of Moundville, county of Marquette, state of Wisconsin, party of the second part, witnesseth: That whereas, the said party of the first part has this day made and executed to the party of the second part a quit claim deed, for certain real estate, particularly described in said quit claim, and reference to which is hereby had for a more particular description, and which said deed was acknowledged before H. R. Pettibone, Esq., a justice of the peace in and for said county of Columbia; and whereas, the said party of the second part, with one Harvey Briggs, have made and executed two several promissory notes, bearing date on the 23d day of July, 1855, one of which is given for the sum of five hundred and eighty-six dollars, with interest, and payable the first day of September, 1856, to said party of the first part, and the other of said notes given for the sum of seven hundred and fifty dollars, and payable to the said party of the first part, the first day of September, A. D. 1857: Now, therefore, the said party of the first part, in consideration of the said notes, does hereby covenant and agree to and with the said party of the second part, her heirs and assigns, that he will, by the first day of September, A. D. 1857, make out, execute and deliver to the said party of the second part, her heirs and assigns, a good and sufficient warrantee deed, conveying to the party of the second part, her heirs and assigns,

Burdick vs. Briggs.

a good and sufficient title in fee simple of said real estate, so particularly described in said quit claim deed; and it is further covenanted and agreed by the said party of the first part, that he will not collect or seek to collect said notes until the perfection of the title of said real estate by the said party of the first part in and to her, the said party of the second part as aforesaid." Witness, &c., and signed, &c.

This bond was alluded to in the mortgage; and that on the first of September, 1857, the plaintiff was ready to make the warranty deed mentioned in the agreement; that he instructed his attorney to make such a deed, with full covenants of warranty, except against the mortgage made by the defendants, covering all the lands embraced in the quit claim deeds. That he had tendered the deed for Frances to Harvey, and to their attorney, and they had refused to receive it. The complaint then averred that the defendants acquired title under and by virtue of the quit claim deeds, to the land thereby conveyed, without any other act to be done by any of the parties to the conveyance, or any other person or persons whomsoever, free and clear from all incumbrances, excepting the right of dower of Martha Burdick, who was at the time of executing said quit claim deed by the plaintiff, to Frances, the wife of the plaintiff, and did not sign the deed; that afterwards her right of dower was released and cut off by a stipulation entered into between the plaintiff and Martha Burdick, on the 16th day of September, A. D. 1857, and by a decree or judgment made and enrolled in the circuit court of the county of Columbia, and state of Wisconsin, on the 26th day of the same month, divorcing the plaintiff and his said wife from the bond of matrimony.

And that the agreement styled a bond in the mortgage, was given by the plaintiff, and accepted by the defendants, to secure them against the right of dower; that it was in effect as understood by the parties, an agreement by the plaintiff with the defendant, Frances, to procure the release or discharge of the right of dower before calling for payment on the notes and mortgage, and that he had procured the release and discharge of dower. That the title to the tracts, pieces or parcels of land is now perfect in Frances, by virtue of the quit claim deeds, free and clear from all incumbrances whatever, except the mortgage, of the plaintiff, and that the defendants, immediately after the sale of land to them or to Frances, went into possession thereof, and ever since that time, and still do continue to occupy the same, and enjoy the profits thereof.

The complaint then averred ownership of the notes and mortgage, and demanded judgment.

The defendant, Frances L. Briggs, answered, denying that she had received a deed from Bowman, for the land; she also denied the consideration of the notes and mortgage, for the purposes set forth, that the plaintiff could not perform the agreement, and the tender of the warranty deed, or that she had received a perfect title before that time. The answer of Harvey Briggs also put the whole complaint at issue.

At the trial, before any evidence was given, the defendants insisted that the plaintiff was not entitled to recoveer in this action from his own showing, because the facts set forth in the complaint did not constitute a cause of action, and moved to dismiss the suit. This motion was overruled by the court.

The plaintiff read the notes and mortgage, also a certificate from the Mineral Point land office to Charles S. Mason, showing the location of the land by a land warrant, a deed from Mason to Cynthia Chamberlain, Chamberlain to Wm. P. Bowman, Bowman to Burdick, and he to Frances L. Briggs. He also proved the making of a warranty deed from Burdick to Mrs. Briggs about the 1st of October, 1857, and tendered it to Harvey Briggs. To all of which the defendants objected under the complaint.

The plaintiff also offered the judgment of the court rendered on the 16th day of September, A. D. 1857, in the suit of Martha Burdick against Israel F. Burdick, divorcing them from the bonds of matrimony, which was received in evidence, and a stipulation between said parties by which the said Martha Burdick released all claim of dower to the lands of said Israel F. Burdick.

At the time of the making of the deed from Chamberlain to Burdick, the latter delivered to the former a mortgage on the land, of $400, which was outstanding at the time of the sale to the defendants, and which Burdick paid on the 15th of July, 1854.

The defendants moved for a nonsuit on this evidence, which was overruled, and judgment rendered for the plaintiff. From which the defendants appealed.

*Harvey Briggs and A. L. Collins,* for the appellants.

The complaint does not state facts sufficient to constitute a cause of action.

1. The mortgage not being absolute, could only become so

Vol. XI.            9

by performance on the part of the plaintiff, of the condition of the bond, mentioned in said mortgage, and set forth at length in the plaintiffs' complaint, and which condition was precedent to the plaintiffs' right of action; therefore, to have entitled the plaintiff to recover, he must have averred performance thereof in his complaint, and which averment was not therein made.    And for which reason, the suit should have been dismissed.    *Warren et al. vs. Bean,* 6 Wis. R., 120; *Kellogg et al. vs. Nelson,* 5 Wis. R., 125; *Ellmore vs. Hoffman et al.,* 6 Wis. R., 68; *Broughton vs. Fuller,* 9 Vt. R., 273; *Johnson vs. Reed,* 9 Mass R., 78; *White vs. Yaw,* 7 Vt. R., 357; *Cleaveland vs. Burton,* 11 Vt., 138.

The plaintiff must, in his complaint, state the facts constituting his cause of action.    *Bristol vs. Saratoga R. R. Co.,* 9 Barb., 158.

It is not sufficient to aver that the plaintiff was ready and willing, or that he offered to perform.    *Governeur & Bibby vs. Tillotson,* 3 Edw. Ch. Rep., 348.

The plaintiff avers that he was ready and willing to perform, &c., but shows that he did not perform; and further, the complaint shows that he could not perform.    *Wright vs. Young,* 6 Wis., 127; *Wells vs. Smith,* 2 Edw. Ch. Rep., 78; *Oakley vs. Morton,* 1 Ker., 25 : 2 Ker., 99.

The certificate from the United States land office at Mineral Point, was irregular and void, it showing a greater amount of land located with a military land warrant, under the act of September 28th, 1850, than said act allowed, or was allowable by any other act or statute of the United States, and of which the court was bound to take judicial notice. It would not entitle the locator to a patent therefor; the certificate should have shown that the excess was paid in money, in order to have perfected the entry or location of said land.

*Alvah Stewart,* for the respondent.

There is no case or bill of exceptions in this cause, upon which this court will review the judgment of the circuit court. The paper intended for such, is made and signed by the attorneys for the appellants, and has never been settled and signed by the judge who tried this action.    *Hunt vs. Bloomer,* 12 How. R., 567; S. C., 3 Kern., 342; *Magie vs. Baker,* 4 id., 435; *Smith vs. Grant,* 15 N. Y. Rep., 590.

Burdick vs. Briggs.

*By the Court*, PAINE, J. This action was brought to fore-close a mortgage given to secure two notes, amounting to $1,336, on one of which there was an indorsement of $100. The notes and mortgage were given to secure the payment of the purchase money of the land, which was sold by the plaintiff to the defendant, Harvey Briggs, and conveyed at his request, to his wife. For a part of the land the plaintiff had at the time of the sale, a contract for the conveyance, and he procured a deed to be made directly to Mrs. Briggs, and also gave her a quit claim of that part to which the title was in him. The notes and mortgage were given back, and the plaintiff at the same time executed and delivered to the de-fendants an agreement not to collect the notes until he had given a warranty deed, and perfected the title in Frances L. Briggs. These facts are all set forth in the complaint, and it is further averred, that the object of this agreement was to re-quire the plaintiff to extinguish the right of dower of his wife, who did not sign the deed, and with whom he had then a divorce suit pending. And it is also alleged that the plain-tiff did, before the bringing of the suit, tender a good and suf-ficient warranty deed of the premises, and that he had extin-guished the dower of his wife by a decree divorcing them from the bond of matrimony, and that by these proceedings a perfect title had become vested in Frances L. Briggs.

The answers deny the execution of the mortgage described in the complaint, which denial however seems to have been based upon some variance in the date of its record. This the court properly disregarded at the trial, as it was very clear that the defendants were not and could not have been misled by it. And they also deny that the plaintiff had tendered the warranty deed, or had perfected the title as he had agreed.

On the trial the defendants objected to any proof under the complaint, on the ground that it did not set forth facts suffi-cient to constitute a cause of action. This objection was

based upon the fact, that it appeared from the complaint that the plaintiff was to perfect the title, yet only claimed to have extinguished his wife's dower by obtaining a decree of divorce and a stipulation between them to that effect, which it was claimed was insufficient. But independent of the stipulation, it seems that a divorce from the bond of matrimony cuts off the wife's right of dower. Bishop on Marriage and Divorce, §§ 661, 662; Shelford on Marriage and Divorce, 478. There is also a provision in the statute, which was in the old Rev. Stat., chap. 69, §25, that a divorce should not cut off the wife's dower, except where it occurred through the husband's being sentenced to imprisonment for life, on account of his adultery, or of his being sentenced to imprisonment for a term of three years or more. The complaint does not state for what cause this divorce was rendered. The pleading might have been more specific if it had so stated. But we think it is an allegation of a fact, that the right of dower was extinguished by the decree. If it was denied, it would have to be established by proof of a decree for such a cause as would have that effect. But when the allegation is made in its general form and it is not denied, nor any motion made to render it more definite, we consider it a sufficient allegation that the dower was cut off by the decree, inasmuch as in law it could be so cut off. It is like a general allegation that a conveyance was made by deed. If some deeds would be sufficient to make it, and others not, if no objection was taken to the general form of the allegation until the trial, and that by way substantially of a demurrer, we think it ought not to prevail.

A preliminary question was raised as to whether the evidence is before this court, the bill of exceptions not having been signed by the judge. That question has been several times suggested, but it has not been necessary to determine it, until it was presented in this case. Under the old practice a bill of exceptions was always authenticated by at least the

signature of the judge, and this method left little room for doubt or uncertainty. But section 16, chapter 132, R. S., 1858, which was a part of the code, provides that exceptions may be stated in a case, or separately, " but need not be sealed or signed." It provides also that they shall be " settled as provided by the rules of court." Rule 15, adopted after the code allows thirty days after notice of the decision, to prepare and serve exceptions. Rule 16 provides that if no amendments are served within twenty days after the service of the exceptions, they shall be deemed assented to as served. The rule alone, without the provision of the statute, might perhaps be fairly construed to mean that if no amendments were served, the judge, on proof of that fact, might sign the bill without further notice to the other party. But taken in connection with the express provision that the exceptions " need not be signed or sealed;" we cannot say, without disregarding this provision, that the signature of the judge is indispensable. And such was the decision of the New York court of appeals in *Zabriskie vs. Smith*, 1 Kern., 616, where it was held that it was not necessary that they should be signed, or authenticated by the judge; this being so, it follows that the party who has served his exceptions, has, if no amendments are served within the time allowed, the right to file his exceptions, which became settled by being deemed assented to under the rule. It is only where amendments are served that a resort to the judge became necessary. But in all cases where the party files his exceptions in this way, he should file the proof of service, and that no amendments had been served. The record would then show, beyond any question, that they were properly a part of the record.

In this case the affidavit shows only the proper service of the exceptions, but as there was no pretence by the counsel on the other side that any amendments were served, we shall consider the exceptions as properly a part of the record. This

point is only important in this case, as by section 12, chap. 264, of the laws of the last session it is expressly provided that the judge shall sign the exceptions, a fact which has fallen under our observation since the foregoing part of this opinion was written.

A number of objections were made by the defendants to the admissibility of evidence. But we think them all unfounded. The evidence offered tended to show a good title in Frances L. Briggs, either by tracing the actual chain of title, or by showing that the incumbrances had been paid and discharged. The certificate of the register of the land office was admissible by a positive statute, and we can see no substance in any of the other objections. We think from the evidence upon which we have to pass, this being an equity case, that the allegations of the complaint which were denied by the answers, were sufficiently established, and that the plaintiff showed his right to collect the notes according to the agreement.

The judgment is affirmed with costs.

DIXON, C. J., having been of counsel, took no part in the decision of this case.

NOTE.—In *Ricker vs. Scofield*, 6 Wis., 367, which was a bill in chancery for specific performance, the attorney for the defendant prepared a bill of exceptions, and served it upon the plaintiff's attorney, and after waiting eight days, as required by rules 19 and 20, O. R., he filed the same with the clerk of the circuit court, without procuring the signature of the judge, and it was sent up with the appeal papers. The supreme court held that such a paper could not be considered as a bill of exceptions.

In *Townsend et al. vs. Bank of Racine*, 7 Wis., 185, the judgment was rendered on the 5th of January, 1858. On the 6th of March the plaintiffs, against whom the judgment was rendered, took their appeal to the supreme court; and on the 19th of March they served a copy of the bill of exceptions upon the defendant's¦ attorney, without any notice accompanying it. The attorneys for the defendant, on the same day, wrote on the copy served as follows, and returned it: "This paper is returned to the plaintiff's attorney; and the defendant's attorneys refuse to accept the same,

Burdick vs. Briggs.

for the reason it was served too late to make and serve a bill of exceptions; and an appeal of said cause was brought and was pending prior to the service of this paper, and the defendant's attorneys had received notice of such appeal." No amendments having been received to the bill, the plaintiff's attorney, on the 2d of April, sent the bill to the circuit judge by mail, with proof of the service on the defendant's attorneys. On the 23d of April the judge indorsed on the bill the following certificate : "I certify that the foregoing bill of exceptions was presented to me on the 2d of April, and remained in my hands until this day, when I signed it without reading it.

April 23, 1858.                                    J. M. KEEP."

The bill so signed was filed on the 11th of May, 1858. The appeal papers certified on the 14th of May, were filed on the 15th of June, 1858, in the supreme court; and on the next day the defendant's attorneys moved the court to strike out the bill of exceptions from the return of the circuit court, "for the following reasons: 1. No bill of exceptions was served in this case upon the defendants' attorneys, within the time allowed by the rules of the court. 2. No bill of exceptions was filed within ten days after settlement. 3. No notice of the settlement of any bill was ever served upon the defendant's attorneys. And 4. No bill of exceptions was served upon defendant's attorneys, until after the case had been removed to the supreme court."

The attorney for the plaintiffs, in opposition to this motion, made an affidavit showing, among other things, that from the 6th or 7th of April to the first of May, he was confined to his room by sickness, and unable to attend to any business; that the bill of exceptions had been given to him in person by the judge, and he was unable to state whether it was received more or less than ten days before the 11th of May; and that the delay of filing the bill in the clerk's office, was occasioned by the sickness of the attorney, and his inability to attend to business.

This motion was argued by the attorneys of the respective parties, and denied by the court, on the 19th of June, 1858. The court held that the bill of exceptions had been well settled; that the failure to file the same in time, if there had been any failure, was sufficiently accounted for, and was excusable.

See also the case of *State vs. Gale,* 7 Wis., 673.